M.T. *v.* ARKANSAS DEPARTMENT OF HUMAN SERVICES

CA 96-949                                                     952 S.W.2d 177

Court of Appeals of Arkansas
Division II
Opinion delivered September 17, 1997

*Anne Orsi Smith*, for appellant.

*Stephen B. Whiting*, for appellee Arkansas Department of Human Services.

*Louis "Whit" Light*, for appellee J.L.

*Kathleen Bailey O'Connor*, Guardian Ad Litem for the minor child.

JOHN F. STROUD, JR., Judge. In June 1995 the Arkansas Department of Human Services filed a petition to terminate the parental rights of M.T. in her biological son, J.L., Jr. The case came before the chancellor in December 1995. At the beginning of the hearing DHS made an oral motion to withdraw its petition, stating that it wanted instead an adjudication of paternity and placement of the child with the natural father. The guardian ad litem responded that the maternal parental rights should be terminated. The natural father, intervenor in this action, stated that he also wanted M.T.'s parental rights terminated but that he would be willing to permit visitation at some point in the future. He asked that the court determine him to be the father of the child.

The chancellor denied the motion of DHS to withdraw the petition, proceeded with the hearing, and granted the petition to terminate M.T.'s parental rights. He ordered legal custody of the child to continue with DHS and placement of the child with the biological father until such time as the paternity action could be adjudicated.

M.T. now appeals, raising three points. She contends that the chancellor erred by not allowing DHS to withdraw its petition, that termination of parental rights was not necessary to clear the child for permanent placement, and that the trial court erred in finding clear and convincing evidence supporting termination of appellant's parental rights. We affirm, addressing the last point first.

■ ■  Grounds for termination of parental rights must be proven by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b) (Supp. 1995). When the burden of proving a disputed fact in chancery is by "clear and convincing" evidence, the question on appeal is whether the chancellor's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous, giving due regard to the opportunity of the trial court to judge the credibility of witnesses. *Beeson v. Arkansas Dep't of Human Servs.*, 37 Ark. App. 12, 823 S.W.2d 912 (1992). Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Corley v. Arkansas Dep't of Human Servs.*, 46 Ark. App. 265, 878 S.W.2d 430 (1994).

Here, appellant's seven-week-old son had skull fractures when he was brought to Arkansas Children's Hospital in November 1993. Appellant said that he had been dropped by her boyfriend the night before while she was at work. SCAN filed a petition for emergency custody of the child, and he was released from the hospital to a foster home. At an adjudication hearing the next month, he was found to be a dependent neglected child. He was placed in foster care in the custody of the DHS and eventually placed in the home of his maternal grandmother. The boyfriend was ordered to have no contact with the child. After the first review hearing in March 1994, the child was returned to appellant's custody. A second emergency custody motion was filed in June 1994 alleging medical neglect of the child by appellant because of untreated and infected blisters on his feet as well as failure to thrive. The motion was granted, and the child was returned to his grandmother's custody. The grandmother notified the court several weeks later that she was not able to continue to

keep the child in her home, and he was placed in the custody of DHS.

SCAN noted that appellant was hostile and had failed to cooperate with the caseworker. Appellant visited her son only sporadically and allowed the boyfriend to move back into her home. In September 1994 appellant's therapist notified SCAN that appellant no longer wished to receive services and that custody of her son was not important enough to her for her to comply with SCAN's requirements and the court's orders. Appellant discontinued visits with her son for several months, resumed them briefly, and discontinued them again. At the review hearing in April 1995 the goal of the case was changed to allow DHS to pursue termination of appellant's parental rights rather than reunification with her child. In the summer of 1995 appellant resumed visits with the child.

In matters involving the welfare of young children, the appellate court gives great weight to the trial judge's personal observations. *In re Adoption of K.F.H. and K.F.H.*, 311 Ark. 416, 844 S.W.2d 343 (1993). Here, the chancellor credited the testimony of the SCAN worker and discredited the testimony of appellant, noting her false assertions that the child was not fathered by her husband. He noted that appellant had shown little interest in her child until the petition to terminate her parental rights was filed. Our own review of the evidence, coupled with our deference to the chancellor on the credibility of the witnesses, shows that the decision to terminate appellant's parental rights was not clearly erroneous.

The next point we address, that the chancellor erred in denying DHS's oral motion to dismiss the petition, is a procedural issue. Under Rule 41 of the Arkansas Rules of Civil Procedure, an action can be dismissed before final submission of a case without prejudice to the plaintiff. A plaintiff is a party who asserts a cause of action against another, and the right to dismiss an action rests only with the plaintiff. *See Walton v. Rucker*, 193 Ark. 40, 97 S.W.2d 442 (1936).

Under Arkansas Code Annotated section 9-27-341(a) (Supp. 1995), termination of parental rights is a remedy available

only to the Department of Human Services and not to private litigants.[1] Therefore, the right of dismissal accrues to DHS as the petitioner, and not to a parent. Though a parent has the right to appeal the termination of parental rights, she is not the proper party to appeal the trial court's refusal to allow the petitioner to withdraw its cause of action. DHS has not appealed the denial of its motion to withdraw. We will not consider any alleged error in the trial court's ruling on this issue because appellant has no standing to raise it.

The final point we consider is whether the chancellor erred in ordering termination of appellant's parental rights "when termination was not necessary to clear the child for permanent placement." Arkansas Code Annotated section 9-27-341(a) (Supp. 1995) reads in part as follows:

> [This section] shall be used only in such cases when the Department of Human Services is attempting to clear a juvenile for permanent placement. The intent of this section is to provide permanency in a juvenile's life in all instances where return of a juvenile to the family home is contrary to the juvenile's health, safety, or welfare, and it appears from the evidence that return to the family home cannot be accomplished in a reasonable period of time.

The statute does not require that termination of parental rights be a predicate to permanent placement, but only that DHS be attempting to clear the juvenile for permanent placement when parental rights are terminated, which was the case here.

Though the disposition plan in this case had at one time been to reunify appellant and the child, the court had ordered the plan changed to terminate her parental rights. At the conclusion of the termination hearing, the court stated:

> [M.T. has] had a long period to try to do the things that would make her have a more significant relationship with this child. Having a few visits. . . on the eve of the termination hear-

---

[1] This remedy is now available under the juvenile code to both the Department of Human Services and a court-appointed guardian ad litem. *See* Act 1227 of 1997, section 13.

ing, doesn't make it with the Court. When you look at the total history of the case, that's not enough. . . .

This child needs permanency. It's the Court's opinion that it is in the best interest of this child to terminate the mother's parental rights. This child, I think, will do far better if he doesn't have to have an occasional visit from someone who really has not brought much to the quality of his life. I think the child would be much better off with [M.T.] out of his life.

. . . .

She may show love and concern when she visits the child, but a child needs something more than a visit every now and then where you stop in and show some concern. A child needs 24-hour parenting, 24-hour responsibility. This child has been abused in this home, and I think it's time to get the child on with his life and get him out of an abusive situation. Hopefully, he'll be into something that's much better and that will not cause this child injury.

Clearly, the court's determination to terminate appellant's parental rights was made pursuant to the authority of Arkansas Code Annotated section 9-27-341. Termination of appellant's parental rights was pursued because a return of the child to her home would have been contrary to the child's health, safety, or welfare and because it appeared that the return could not be accomplished within a reasonable period of time.

Affirmed.

ROBBINS, C.J., and BIRD, J., agree.