SLIP OPINION

Cite as 2014 Ark. App. 475

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–14–306

| | |
|---|---|
| VIRGIL DRAKE<br><br>APPELLANT<br><br>V.<br><br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILD<br><br>APPELLEES | Opinion Delivered September 17, 2014<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. JV-12-426]<br><br>HONORABLE MARK HEWETT, JUDGE<br><br>AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Virgil Drake appeals from a Sebastian County Circuit Court order terminating his parental rights to his son, C.D. Because this finding was supported by clear and convincing evidence, we affirm.

We review termination of parental rights cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). To terminate parental rights, at least one statutory ground must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341 (Repl. 2009); *see M.T. v. Ark. Dep't of Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177 (1997). Drake concedes that the Department sufficiently established a statutory ground for termination—the prior involuntary termination of his parental rights to other children—and that the child was adoptable. His only challenge to the termination is the court's determination that potential harm would befall the child if custody was returned to

him. Thus, the issue for our consideration is whether the court's finding that it was in the child's best interest to terminate parental rights was proved by clear and convincing evidence. *M.T.*, *supra*.

Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992). The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). As a result, a review of the facts is crucial to our determination.

Tammie and Virgil Drake met in 2000 and subsequently married. Three children were born to them during the course of their marriage—B.D., K.D., and C.D.[1] This case began in April 2012, when C.D. was taken into emergency custody by the State of Oklahoma shortly after his birth. C.D. was removed after hospital staff advised an Oklahoma child-welfare worker that Tammie had not been providing care for the child, was leaving the baby with nursing staff, and had expressed a fear of being alone with the newborn. At the time of C.D.'s birth, the Arkansas Department of Human Services (DHS) had already initiated dependency-neglect proceedings for K.D. and B.D. In June 2012, the State of Oklahoma found C.D. to be "deprived" under Oklahoma law after the parents failed to appear, and C.D. became a ward of the court. Because of the open, pending case on B.D. and K.D. in

---

[1] Tammie's parental rights to four other children—K.G., S.G., C.G., and D.G.—were terminated in Nebraska in 1997 and 2002.

Arkansas, C.D.'s case was transferred by the Oklahoma district court to Sebastian County Circuit Court in July 2012.

Upon transfer to Arkansas, the circuit court had two open dependency-neglect cases: one involving B.D. and K.D., and one involving C.D. In both cases, the circuit court addressed the issues of Tammie Drake's mental health and substance abuse, as well as Virgil's failure to recognize the risk of danger that Tammie presented to the children. In October 2012, the circuit court entered an order terminating the Drakes' parental rights to B.D. and K.D.[2] In its order, the court noted that Tammie Drake suffered from mental-health and substance-abuse issues; that she failed to remain on her prescribed medication; that she had been provided services to address those issues; and that, despite the services offered, she had been either unwilling or unable to address and correct those issues. As to Virgil, the court noted that Virgil Drake did not recognize that Tammie presented a risk of harm to the juveniles if left in her care, despite being provided appropriate services to educate him. The court further found that Virgil was either unwilling or unable to provide for their safety due to his lack of awareness regarding Tammie's mental-health and substance-abuse problems as evidenced by his leaving the children with Tammie as the primary caregiver while he worked 16 hours a day.

In October 2013, a year after the termination of appellant's rights to B.D. and K.D., DHS filed a petition for termination of the Drakes' parental rights to C.D., alleging that

---

[2] The termination to B.D. and K.D. was upheld by this court in *Drake v. Arkansas Department of Human Services*, 2013 Ark. App. 274, 427 S.W.3d 710.

Tammie presented a risk of danger to the child due to her mental-health and substance-abuse issues and that Virgil was either unwilling or unable to provide for the child's safety. After a hearing on the petition in December 2013, the trial court entered an order terminating the Drakes' parental rights.[3] The December 2013 order terminating the Drakes' parental rights to C.D. mirrored the October 2012 termination order with respect to C.D.'s siblings in several aspects. Like the October 2012 order, the December 2013 order focused, in large part, on Tammie's ongoing mental-health issues and her failure to adequately follow through on treatment. The court stressed that Tammie's "extensive, long-standing, and ongoing mental health issues" made Tammie a danger to juveniles placed in her care or supervision and that her failure to comply with her treatment plan in this case paralleled her prior and repeated failure to do so in previous cases, which had resulted in termination of her parental rights as to those juveniles. And, like the October 2012 order, the December 2013 order reiterated Virgil's inability or unwillingness to acknowledge the danger Tammie posed to the children.

After outlining these facts, the trial court found the requisite statutory ground for termination (prior involuntary termination of a sibling) had been proved and, that it would be in C.D.'s best interest to terminate their parental rights. The court found that C.D. was adoptable and that C.D. would be subject to a great risk of potential harm if returned to the custody of either parent. The court found that Tammie Drake continued to suffer from

---

[3] Tammie Drake did not appeal the decision terminating her parental rights and, thus, she is not a party to this appeal.

extensive, long-standing, and ongoing mental-health issues that make her a danger to C.D. if placed in her care or supervision; that she did not accept her role in what had happened to her children and instead blames others; that Virgil Drake did not recognize that Tammie presented a danger to C.D.; that he was unwilling to provide sufficient protection for juveniles placed in Tammie's care; and that C.D. was so young that he could not protect himself from the danger that Tammie presented. Accordingly it was in C.D.'s best interest to terminate the Drakes' parental rights.

On appeal, Virgil argues that it was error for the trial court to terminate his parental rights because it was not in C.D.'s best interest to do so. More specifically, Virgil argues that there had been no evidence of a single occasion where Tammie's current mental-health issues posed a danger to C.D or that Virgil had improperly entrusted C.D. to Tammie's care. Thus, the trial court erred in determining that there was potential harm in returning C.D. to his care. We disagree.

In considering the potential harm caused by returning the child to a parent, the court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Welch v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 798, 378 S.W.3d 290. Potential harm must be viewed in a forward-looking manner and in broad terms. *Collins v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 90. Additionally, the risk for potential harm is but a factor for the court to consider in its analysis. *Carroll v. Ark. Dep't of Human Servs.*, 85 Ark. App. 255, 148 S.W.3d 780 (2004).

The evidence presented to the trial court in this case supports its potential-harm finding. The trial court was entitled to consider the findings contained in the previous termination order as a backdrop to these hearings. The Drakes' parental rights to C.D.'s siblings had been terminated a little over a year previously. One of the issues upon which the prior termination was based was the danger posed by Tammie's mental-health issues and Virgil's denial of that danger. In the case involving C.D., both parents had been offered services, but the court concluded that the previous issues had not yet been resolved. Testimony was then presented at the termination hearing that, while Tammie had been placed on medication for her mental-health issues, she had not attended individual counseling, had not been consistent in attending medical-management meetings, and had at least one outburst with the family service worker that was out of proportion to the circumstances and was of concern. From this evidence, the trial court could properly conclude that Tammie was not successfully managing the very issues that resulted in the prior terminations and a potential threat of harm remained to C.D. as a result. Despite this evidence, and despite having his parental rights to two other children terminated because of the danger Tammie posed, Virgil still continued to assert that Tammie posed no danger to C.D. or any other child and saw no danger in allowing Tammie to be the child's caregiver. Given C.D.'s age and inability to protect himself if placed in Tammie's care, it was not clearly erroneous for the trial court to determine that there was a potential threat of harm to C.D. if placed in Virgil's care.

Affirmed.

GRUBER and VAUGHT, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, Dependency-Neglect Appellate Division, for appellant.

*Tabitha Baertels McNulty*, Office of Policy and Legal Services, for appellee.

*Chrestman Group, PLLC*, by: *Keith Chrestman*, attorney ad litem for minor children.