Cite as 2026 Ark. App. 16

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-25-421

| | | |
|---|---|---|
| JESSE SPAAR | | Opinion Delivered January 14, 2026 |
| | APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23JV-23-84] |
| V. | | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | | HONORABLE DAVID M. CLARK, JUDGE |
| | | AFFIRMED; MOTION TO WITHDRAW GRANTED |
| | APPELLEES | |

**STEPHANIE POTTER BARRETT, Judge**

Jesse Spaar appeals from the April 28, 2025, Faulkner County Circuit Court order terminating his parental rights to his two children, MC1 and MC2. Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Rule 6-9(j) of the Rules of the Arkansas Supreme Court and Court of Appeals, Spaar's counsel has filed a no-merit brief and a motion to withdraw, asserting there is no issue of arguable merit to raise on appeal. The clerk of this court provided Spaar with a copy of his counsel's brief and notified him of his right to file a pro se statement of points for reversal, which Spaar has not done. We affirm the termination of Spaar's parental rights and grant counsel's motion to withdraw.

## I. *Relevant Facts*

On March 7, 2023, the Arkansas Department of Human Services ("the Department") received a call from the Conway Police Department with allegations of extreme environmental neglect as to MC1 and MC2 and their four older siblings.[1] The Conway Police Department arrested Spaar and Patrisha Brewer, the mother of all six children, on six counts of child endangerment. The Department, after conducting a home visit, determined the children did not have clothing to wear; MC1 and MC2, who were six months old at the time, were not developing appropriately for their age; and the home was deemed uninhabitable. The Department exercised a hold on MC1 and MC2, along with their four older half siblings, due to Spaar's and Brewer's incarceration and the condition of their home.

On March 8, the Department filed a petition for ex parte emergency custody and dependency-neglect. The petition alleged Spaar was incarcerated at the Faulkner County Jail pending charges of rape-sexual intercourse-under fourteen, sexually grooming a child, and second-degree endangering the welfare of a minor. An ex parte order placing MC1, MC2, and their siblings in the Department's legal custody was filed on March 9.

On March 14, a probable-cause hearing was held, and an adjudication hearing was set. The children remained in the custody of the Department. At the April 11, 2023, adjudication hearing, MC1 and MC2, along with their siblings, were found to be dependent-

---

[1] Spaar is not the father of the four older siblings. However, all the siblings share the same mother, Patrisha Brewer, who is not a party to this appeal.

neglected on the basis of the allegations in the Department's petition. The circuit court ordered the children to remain in the Department's custody and set the goal of the case as reunification with a concurrent goal of adoption. Spaar was ordered to cooperate with the Department; keep the Department informed of his residence, employment status, and contact information; take medication as prescribed; refrain from the use of illegal drugs and alcohol; complete parenting classes; obtain and maintain stable housing and employment; maintain a clean, stable, and safe home for himself and his children; and demonstrate the ability to protect his children and keep them safe.

Review hearings were held on July 11 and October 10, 2023; and January 12, 2024. At each of these hearings, the children remained in the custody of the Department with a goal of reunification and a concurrent goal of adoption. Additionally, because Spaar was incarcerated during each of these hearings, he was consistently found by the court to be noncompliant with court orders or the case plan. At the January hearing, the court entered a no-contact order prohibiting Spaar from visiting with MC1 and MC2. The court's findings were the same at the March 26, 2024, permanency-planning hearing and the June 4, 2024, fifteen-month review hearing. On November 6, 2024, a final review hearing was held, and the circuit court changed the goal of the case to adoption. The children remained in the custody of the Department.

On January 3, 2025, the Department filed a petition to terminate Spaar's and Brewer's parental rights alleging the following grounds for termination: (1) the children had been removed from Brewer's and Spaar's custody for over twelve months, and both parents

3

had failed to remedy the condition that caused the children's removal; (2) Spaar's ongoing incarceration was a subsequent factor from the original petition that prevented the children from being placed in his custody; and (3) aggravated circumstances—little likelihood that services would result in a successful reunification between Spaar and his children due to his ongoing incarceration and the active no-contact order.

On April 8, 2025, after several continuances, the termination hearing was held. The hearing dealt with the termination of parental rights as to MC1 and MC2 as well as their younger siblings who were born after the initial case opened.[2] Prior to any testimony, the Department introduced a certified copy of a sentencing order from case No. 23CR-23-238 filed on January 28, 2025, showing that Spaar was sentenced to life in prison for the rape of a minor under the age of fourteen.

Spaar testified he was currently being housed at the East Arkansas Regional Unit of the Arkansas Division of Correction. Spaar stated he had been there for approximately two weeks after receiving a life sentence in January. Spaar's testimony concluded with the assertion that he intended to appeal his sentence.

Sara Lewis, the primary caseworker, testified she had been assigned to the case for approximately one year, and she recommended Spaar's parental rights be terminated as to all four of his children because he had been incarcerated for almost the entirety of the

---

[2]The termination of parental rights as to the younger siblings of MC1 and MC2 is discussed in the companion case also handed down today, *Spaar v. Arkansas Department of Human Services*, 2026 Ark. App. 17.

children's lives. Lewis further testified that all four children were placed together, and their foster placement wished to adopt them if parental rights were terminated.

After the conclusion of all testimony and closing statements, the court terminated the parental rights of both Spaar and Brewer under the grounds alleged in the Department's petition. On April 18, the court entered an order reflecting its ruling.

This no-merit appeal followed.

A circuit court's order terminating parental rights must be based upon findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2023). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Hum. Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to assess the witnesses' credibility. *Lee v. Ark. Dep't of Hum. Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008). Only one ground is necessary to terminate parental rights. *Id.*

Arkansas Supreme Court Rule 6-9(j)(1) allows counsel for an appellant in a termination case to file a no-merit brief and motion to withdraw if, after studying the record

and researching the law, counsel determines the appellant has no meritorious basis for appeal. The brief must include an argument section that includes all circuit court rulings that are adverse to the appellant on all objections, motions, and requests made by the party at the hearing from which the appeal arose and an explanation why each adverse ruling is not a meritorious ground for reversal. Ark. Sup. Ct. R. 6-9(j)(1)(A). Additionally, the brief's statement of the case and facts must contain all rulings adverse to the appellant made by the circuit court at the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6-9(j)(1)(B). In evaluating a no-merit brief, the issue for this court is whether the appeal is wholly frivolous or whether there are any issues of arguable merit for appeal. *Linker-Flores*, 359 Ark. 131, 194 S.W.3d 739.

## II. *Statutory Grounds*

To terminate parental rights, a circuit court must find clear and convincing evidence as to one or more of the grounds for termination listed in Ark. Code Ann. § 9-27-341(b)(3)(B).[3] *Trogstad v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 443, 609 S.W.3d 661. The circuit court must also find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically

---

[3]The applicable Juvenile Code was repealed by Act 518 of 2025 and recodified at Arkansas Code Annotated sections 9-35-301 to -337 et seq. (Supp. 2025). However, the legislative changes were not in effect when the order on appeal was entered. Therefore, the previous version of the Code is relied on in this case and referenced throughout this opinion.

addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i)&(ii).

In this no-merit brief, counsel asserts that after a conscientious review of the record, there are no issues of arguable merit for appeal. Counsel contends "any challenge to the court's determination . . . would be frivolous." Here, the court terminated Spaar's parental rights on the following grounds: (1) failure to remedy; (2) subsequent factors; and (3) aggravated circumstances. However, counsel argues only the aggravated-circumstances ground in her brief, asserting it was the strongest factor relied on by the court, and counsel need only address one ground because only one ground is necessary for termination. In a termination-of-parental-rights case, we may affirm by addressing a statutory ground that counsel has omitted in her brief. *See Houseman v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 227, at 10, 491 S.W.3d 153, 160 (permitting counsel to withdraw even though counsel's no-merit brief failed to address the subsequent-factors ground that pertained to one child; "Although counsel has not discussed this ground, testimony in the abstract to her brief addresses it."). Even if an adverse ruling is omitted from a no-merit brief in a termination case, we may affirm if the ruling would clearly not constitute a meritorious ground for appeal. *Hughes v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 526. This is because in termination cases, "through de novo review for clear error, the appellate court will review all of the evidence presented for error, resolving all inferences in favor of the appellee." *Sartin v. State*, 2010 Ark. 16, at 7, 362 S.W.3d 877, 881 (citing *Dinkins v. Ark. Dep't of Hum. Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001)).

Because only one statutory ground is required to be proved, we will focus on the circuit court's finding of aggravated circumstances without addressing the alternative statutory grounds relied on by the circuit court in terminating Spaar's parental rights. *See Shaffer v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 208, 489 S.W.3d 182. Under the "aggravated circumstances" ground, a court may terminate parental rights if the court has determined that there is little likelihood that further services will result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix). Aggravated circumstances occur when a parent is not following through with offers of assistance, is not completing basic goals of the case plan, and is not making significant progress. *Aday v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 677, at 4. Sufficient evidence supports the circuit court's finding of aggravated circumstances in this case. Here, the court found:

> [Spaar] identified the sentencing order that was entered into evidence which proved that he was sentenced to life in prison with additional sentences that exceeded 150 years. It is clear that there is little likelihood that offering services to him would result in reunification.

The evidence shows Spaar will be incarcerated for the remainder of his life, which will include the rest of MC1's and MC2's childhood. Additionally, the record demonstrates Spaar was incarcerated from the time the case first opened, and at the time of the termination hearing, was sentenced to life in prison. Due to his incarceration, Spaar was unable to participate in services or visitation with MC1 and MC2 and therefore made no progress toward improving the circumstances that prevented the children from being returned to his custody. Counsel for Spaar points out that "a parent's continued inability to protect and care

8

for his or her child and failure to benefit from the services provided demonstrate little likelihood." *Bentley v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 374, 554 S.W.3d 285. The circuit court in this case is correct—there is little likelihood that offering services to Spaar would result in reunification because MC1 and MC2 cannot be placed with him in prison. Under these circumstances, there is no meritorious challenge to the circuit court's termination under the aggravated-circumstances little-likelihood ground.

III. *Best Interest*

In making a "best interest" determination, the circuit court is required to consider two factors: (1) the likelihood that the child will be adopted and (2) the potential for harm to the child if custody is returned to a parent. *Pine v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 781, at 9–10, 379 S.W.3d 703, 708–09. Adoptability is not an essential element; rather, it is a factor that the circuit court must consider. *Tucker v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 430, at 7, 389 S.W.3d 1, 4–5. Likewise, the potential harm to the child is a factor to be considered, but a specific potential harm does not have to be identified or proved by clear and convincing evidence. *Pine*, 2010 Ark. App. 781, at 11, 379 S.W.3d at 709. The potential-harm analysis is to be conducted in broad terms and in a forward-looking manner. *Shawkey v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 2, at 5, 510 S.W.3d 803, 806.

Here, Sara Lewis, the family service worker assigned to the case, testified that MC1 and MC2 are adoptable, and their current foster placement wished to adopt them if parental rights were terminated. Testimony from a Department worker that a child is adoptable is sufficient to support an adoptability finding. *Solee v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App.

9

640, 535 S.W.3d 687. Therefore, there can be no meritorious challenge to the circuit court's adoptability finding.

Counsel also argues the circuit court had sufficient evidence to find that MC1 and MC2 faced potential harm if returned to Spaar's care due to his incarceration. Counsel asserts this finding cannot be seriously disputed on appeal. We agree and affirm.

Counsel has complied with the requirements of *Linker-Flores* and Rule 6-9(j) and hold that any appeal would be wholly without merit and frivolous. Accordingly, we grant counsel's motion to withdraw and affirm the order terminating Spaar's parental rights to MC1 and MC2.

Affirmed; motion to withdraw granted.

VIRDEN and THYER, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

One brief only.